EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Ex parte: | 2014 TSPR 125 |
| Comunicación del Lcdo. Carlos J. López Feliciano | 191 DPR ____ |

Número del Caso: MC-2014-213

Fecha: 20 de octubre de 2014

Materia: Resolución del Tribunal con Votos

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ex parte:

Comunicación del Lcdo. Carlos       MC-2014-213
J. López Feliciano

RESOLUCIÓN

En San Juan, Puerto Rico, a 20 de octubre de 2014.

En el asunto de epígrafe estamos llamados a ejercer nuestro poder reglamentario e interpretar varias disposiciones de las Reglas de Disciplina Judicial, 4 L.P.R.A Ap. XV-B. En específico, debemos establecer quién es la parte promovente de un procedimiento disciplinario contra un miembro de la judicatura cuando ese proceso fue promovido por un panel de jueces de apelaciones que elevaron el asunto a la atención de este Tribunal Supremo, procediendo entonces el Juez Presidente a referirlo a la atención de la Oficina de Administración de los Tribunales (O.A.T.).

Para atender esta controversia reglamentaria, además del derecho aplicable, debemos ser conscientes de la coyuntura histórica en la que se ha encontrado la Rama Judicial en los últimos meses. Además, debemos guiarnos por los postulados básicos que este Tribunal ha enfatizado en las últimas semanas, a saber, la misión de "fortalecer la confianza del Pueblo asegurando la transparencia de los procesos y la información y garantizando la participación ciudadana." Enmiendas a las Reglas de Disciplina Judicial, 2014 T.S.P.R. 105, 191 D.P.R. ___ (2014).

Antes de adentrarnos a analizar el asunto de autos, pasemos a exponer los hechos que lo ocasionaron.[1]

**I**

El 2 de febrero de 2011, un panel de jueces del Tribunal de Apelaciones compuesto por el ex Juez Carlos J. López Feliciano (en adelante el peticionario), el Juez Hon. Sixto Hernández Serrano y la Jueza Hon. Olga Birriel Cardona (en adelante Jueces de Apelaciones) refirieron a este Tribunal Supremo, una Resolución de Inhibición emitida por el entonces Juez Superior Hon. Carlos I. Candelaria Rosa (en adelante Juez Candelaria Rosa). Los Jueces de Apelaciones refirieron la Resolución a la atención de este Foro ya que, a su entender, el Juez Candelaria Rosa había violado los Cánones de Ética Judicial al emitir una Resolución en la que se refirió despectivamente hacia los Jueces de Apelaciones luego de que estos revocaran una determinación suya en el caso *Pueblo v. Héctor Cordero Cruz*, J SC2008G-0337.

Tras recibir la solicitud para investigar la conducta del Juez Candelaria Rosa, el entonces Juez Presidente señor Hernández Denton procedió a incluir en la agenda del Pleno de este Tribunal llevada a cabo el 18 de febrero de 2011 la petición promovida por los Jueces de Apelaciones. En esa reunión se acordó que, de acuerdo con lo solicitado por los Jueces de Apelaciones, el asunto debía referirse a la atención de la Directora Administrativa de los Tribunales para que se comenzara el procedimiento de investigación correspondiente. Así las cosas, el 22 de febrero de 2011 el entonces Juez Presidente señor Hernández Denton envió una comunicación a la entonces Directora Administrativa de los Tribunales Hon. Sonia I. Veléz Colón en la que, de conformidad con las Reglas de Disciplina Judicial, *supra*, remitió el asunto a la O.A.T. para que se iniciara una investigación a tenor con la solicitud de los Jueces de Apelaciones.[2]

Casi tres (3) años más tarde, el 15 de octubre de 2013 la División de Asuntos Legales de la O.A.T. le sometió un Informe de Investigación a la Directora Administrativa de los Tribunales.[3] En este, la División de Asuntos Legales

---

[1] Es un principio básico y elemental que cuando este Tribunal ejerce los poderes cuasi-legislativos que la Constitución de Puerto Rico expresamente le delegó para reglamentar asuntos de la Rama Judicial, no es necesaria la existencia de un caso y controversia.

[2] Véase, *Comparecencia Especial en Cumplimiento de Orden*, Anejo 4.

[3] La Regla 7(b) de las de Disciplina Judicial establece lo siguiente:

La Oficina de Asuntos Legales o la persona designada por la Directora o el Director realizará una investigación

concluyó que, aunque las acciones del Juez Candelaria Rosa podían constituir violaciones a los Cánones de Ética Judicial, esta era la primera vez que este incurría en ese tipo de conducta y se trató de una "actuación desacertada en el furor del momento".[4] Por lo tanto, recomendó que se archivara la Queja presentada contra el Juez Candelaria Rosa, pero que se le apercibiera a este que no debía incurrir en esas actuaciones nuevamente.

El 20 de noviembre de 2013, la Directora Administrativa de los Tribunales le cursó una comunicación al Juez Candelaria Rosa en la que le notificó los resultados de la investigación realizada por la Oficina de Asuntos Legales y le expresó lo siguiente: "Confiamos en el uso cuidadoso y prudente en sus expresiones, particularmente cuando lo haga en documentos sujetos al escrutinio público cuya divulgación pudiera lacerar la imagen de la Rama Judicial."[5] Es decir, la Directora Administrativa obvió la recomendación de la Oficina de Asuntos Legales de la O.A.T. y no apercibió al Juez Candelaria Rosa de que no debía incurrir nuevamente en conducta como la que fue objeto de la Queja. Del expediente podemos constatar que en la carta que la Directora le envió al Juez Candelaria Rosa se indica que solo se le enviaría copia de la misma al entonces Juez Presidente señor Hernández Denton.[6]

Posteriormente, el 11 de septiembre de 2014 el peticionario – quien, como mencionamos, formó parte del Panel de Jueces del Tribunal de Apelaciones que solicitó la investigación contra el Juez Candelaria Rosa- le cursó una comunicación a la Jueza Presidenta señora Fiol Matta. En esta le peticionó que le informara sobre los resultados de

---

de la queja y rendirá a la Directora o el Director un informe de investigación, dentro de un término de ciento veinte (120) días, a partir de la notificación de la queja a la jueza o el juez promovido conforme a la Regla 6(c). Este término podrá ser ampliado por la Directora o el Director por justa causa. 4 L.P.R.A Ap. IV-B

En su comparecencia a este Tribunal, la Directora Administrativa de los Tribunales no incluyó documentación que demostrara cuándo en efecto se le notificó al Juez Candelaria Rosa en cuanto a la Queja presentada en su contra ni en cuantas ocasiones amplió el término para que la Oficina de Asuntos Legales rindiera su Informe de investigación.

[4] Véase, *Comparecencia Especial en Cumplimiento de Orden,* Anejo 1. Debemos enfatizar que el mero hecho de que sea la primera vez que un miembro de la judicatura incurra en actos que violen los Cánones de Ética Judicial no necesariamente es óbice para ordenar el archivo de una Queja.

[5] Id.

[6] Id.

la Queja que se había presentado contra el Juez Candelaria Rosa ya que estos nunca le fueron notificados.

Días más tarde, el 26 de septiembre de 2014 el peticionario envió otra misiva a la Jueza Presidenta señora Fiol Matta, esta vez con copia a todos los demás miembros de este Tribunal. En esta comunicación el peticionario informó que aún no había recibido contestación en cuanto al pedido que había realizado en su anterior carta. Además, comunicó que se había enterado por medios de comunicación en cuanto al archivo de la Queja presentada contra el Juez Candelaria Rosa. El peticionario nuevamente informó que a él nunca se le notificaron los resultados de la investigación que solicitó contra el Juez Candelaria Rosa. Por ende, el peticionario formalmente solicitó en su misiva que se reabriera la investigación de la referida Queja.

Una vez recibida la comunicación del peticionario, el 29 de septiembre de 2014 este Tribunal le ordenó a la Directora Administrativa de los Tribunales que, en un término de cinco (5) días, mostrara causa por la cual los resultados de la investigación de la Queja presentada contra el Juez Candelaria Rosa no debían ser notificados a los Jueces de Apelaciones de conformidad con las Reglas de Disciplina Judicial, *supra*. En el ínterin, el peticionario compareció a este Tribunal mediante escrito titulado *Moción Informativa y de Reconsideración* en la que informó que, a instancias de la Jueza Presidenta señora Fiol Matta, la Oficina de Asuntos Legales de la O.A.T. había "compartido" con él los resultados de la investigación de la Queja en controversia. Además, reiteró su pedido de que se reabriera la Queja contra el Juez Candelaria Rosa o que este Tribunal proveyera cualquier remedio que entendiese necesario.

Posteriormente, el 6 de octubre de 2014 la Directora Administrativa de los Tribunales compareció ante este Tribunal mediante *Comparecencia Especial en Cumplimiento de Orden*. En esta se informó lo siguiente:

> La Directora Administrativa de los Tribunales no tiene objeción alguna a dicha notificación. A tales fines, traemos a la atención de este Honorable Tribunal que el 26 de septiembre de 2014, por instrucciones de la Jueza Presidenta, Hon. Liana Fiol Matta, le remitimos al licenciado López Feliciano y los Jueces de Apelaciones Hernández Serrano y Birriel Cardona, copia del informe de investigación y de la comunicación del 20 de noviembre de 2013 que fue suscrita por la Directora Administrativa en relación a este asunto.[7]

---

[7] Id., pág. 1.

Contando con la comparecencia de la Directora Administrativa de los Tribunales, procedemos a atender el asunto reglamentario ante nos.

**II**

**A.**

Es incuestionable que "el comportamiento de los miembros de la Judicatura constituye uno de los pilares en los que se cimienta el Sistema Judicial. Por ello, se exige una conducta intachable para que éstos sirvan de ejemplo, fomenten el respeto y la confianza del pueblo en el Sistema Judicial." *In re Cancio González*, 2014 T.S.P.R. 21, 190 D.P.R. ___ (2014). Cónsono con ese principio, la Sección 11 del Artículo V de la Constitución de Puerto Rico establece que los jueces de los tribunales inferiores a este Tribunal "podrán ser destituidos por el Tribunal Supremo por las causas y mediante los procedimientos que se dispongan por ley". L.P.R.A. Tomo 1, pág. 418. Además, la Sección 7 del Artículo V de la Constitución le confirió a este Foro el poder para adoptar las reglas para la administración de los Tribunales. Id., pág. 416. De conformidad con estas disposiciones constitucionales, promulgamos tanto los Cánones de Ética Judicial, 4 L.P.R.A. Ap. IV-B C., como las Reglas de Disciplina Judicial, *supra.*

Hemos afirmado que con este último cuerpo reglamentario "se aprobó un proceso disciplinario que garantiza a la ciudadanía y a la judicatura la justa y pronta consideración de todo asunto presentado y el debido proceso de ley." *In re Cancio González*, *supra*, pág. 7.[8] Además, al ejercer nuestro poder de reglamentación y recientemente enmendar estas reglas, expresamos que este Tribunal no toleraría conducta antiética por parte de los miembros de la judicatura puertorriqueña y que el principio de transparencia regiría los procedimientos disciplinarios contra estos. Véase, *Enmiendas a las Reglas de Disciplina Judicial, supra.*

En cuanto al inicio del procedimiento disciplinario contra miembros de la judicatura, recientemente enfatizamos que "[de] acuerdo con las Reglas de Disciplina, el proceso disciplinario contra un juez o una jueza se inicia con la presentación de una queja juramentada ante la Oficina de Asuntos Legales de la Oficina de Administración de los Tribunales." *In re Cancio González*, *supra*, pág. 8.

---

[8] Para una discusión histórica detallada en cuanto al desarrollo de nuestro poder para disciplinar a los jueces de tribunales inferiores y los procedimientos que culminaron en la aprobación de las Reglas de Disciplina Judicial, véase *In re Cancio González*, 2014 T.S.P.R. 21, 190 D.P.R. ___ (2014).

En síntesis, de acuerdo con las Reglas de Disciplina Judicial, *supra*, un proceso disciplinario puede comenzar de tres (3) maneras. La primera, establecida en la Regla 5(a), se da cuando cualquier persona interesada en que se investigue la conducta de un juez, presenta una Queja personalmente o por correo en alguna región judicial o en la Oficina de Asuntos Legales de la O.A.T. La Regla 5(b) establece los requisitos de forma que deben cumplir este tipo de quejas, aunque la propia Regla establece que "[e]l incumplimiento con alguno de los requisitos...no debe causar necesariamente el archivo de la queja." *Enmiendas a las Reglas de Disciplina Judicial, supra*, pág. 5.

La segunda manera en que puede generarse un procedimiento disciplinario contra un juez se establece en la Regla 5(c). Esta dispone que el Juez o la Jueza Presidenta de este Tribunal, un Juez Asociado o Jueza Asociada de este Foro o la Directora Administrativa de los Tribunales pueden solicitar por escrito que se abra una investigación en cuanto a la conducta de un juez. Esa solicitud se considerará como una Queja y no tendrá que cumplir con los requisitos formales de la Regla 5(b), *supra*.

Finalmente, la tercera manera en que se abre un procedimiento disciplinario ocurre de acuerdo con la recién enmendada Regla 3 de las de Disciplina Judicial, *supra*. En esta se estableció que "[l]a Oficina de Asuntos Legales podrá investigar información confidencial o anónima que pueda dar lugar a la presentación de una queja." *Enmiendas a las Reglas de Disciplina Judicial, supra*, pág. 4.

Una vez se activa el procedimiento disciplinario, las Reglas de Disciplina Judicial, *supra*, exigen que la Oficina de Asuntos Legales de la O.A.T. lleve a cabo una investigación en cuanto a los hechos que generaron la Queja. Véase, Regla 7(b). Cuando se concluya la investigación, esa Oficina rendirá un Informe a la Directora Administrativa de los Tribunales en la cual recomendará si se continúa con el procedimiento mediante una Querella que será sometida a la consideración de la Comisión de Disciplina Judicial o si sencillamente se archiva la Queja presentada. Id. En este último caso, las Reglas de Disciplina establecen unos requisitos de notificación tanto al Juez investigado como a la parte promovente de la Queja.

Específicamente, y clave para la controversia reglamentaria de autos, la Regla 8(c) establece que "[s]i el informe no expone conducta que amerite acción disciplinaria, la Directora o el Director, dentro de...diez (10) días desde su recibo, desestimará la queja, ordenará su archivo y notificará dicha determinación a la jueza o al

juez promovido y a la parte promovente." 4 L.P.R.A. Ap. IV-B (Énfasis suplido).

La notificación que exige la Regla 8(c) es de cardinal importancia ya que con ella se activan unos derechos a los cuales es acreedora la parte promovente de una Queja disciplinaria. En cuanto a ello, la Regla 8(d) establece lo siguiente:

> d. La notificación a la parte promovente le informará de su derecho a solicitar reconsideración ante la Directora o el Director, dentro de los 10 días siguientes a la notificación de archivo, si no está conforme con la determinación de desestimar la queja. De no solicitar reconsideración, la determinación de la Directora o del Director será final. Id. (Énfasis suplido).

En la controversia enmarcada en el asunto reglamentario de epígrafe, el peticionario y la Directora Administrativa de los Tribunales difieren en cuanto a la apreciación de esta Regla y del significado de parte promovente en el contexto de las Reglas de Disciplina Judicial, supra. Por un lado, el peticionario sostiene que él y sus ex compañeros Jueces de Apelaciones son la partes promoventes de la Queja presentada contra el Juez Candelaria Rosa. Al así serlo, sostiene que tienen derecho a que se les **notifiquen** –no meramente que se **"compartan"** con ellos- los resultados de la investigación de la Queja de acuerdo con las Reglas 8(c) y (d) de las de Disciplina Judicial. Con esa notificación, se activa el derecho del peticionario a solicitar la reconsideración del archivo de la Queja que provee la Regla 8(d), cosa que no ocurre con un mero "compartir" de información. En efecto, según hemos visto el peticionario ni siquiera se había enterado del archivo de la Queja contra el Juez Candelaria Rosa hasta hace unos días. Ello a pesar de que la Regla 8(d) le exige a la Directora Administrativa de los Tribunales que informe textualmente a la parte promovente de su derecho a solicitar reconsideración de la determinación de archivar una Queja.

Por otro lado, la Directora Administrativa de los Tribunales, aunque no objeta que se le notifique al peticionario, sostiene que en su momento no le notificó en cuanto al archivo de la Queja ni a él ni a los Jueces de Apelaciones ya que la parte promovente del proceso disciplinario lo fue el entonces Juez Presidente señor Hernández Denton.[9]

---

[9] *Comparecencia Especial en Cumplimiento de Orden*, pág. 3.

Enmarcada la controversia, pasemos a discutir el significado que este Tribunal ha dado al término <u>parte promovente</u> en el contexto de algunos Reglamentos que hemos aprobado.

**B.**

De entrada, las propias Reglas de Disciplina Judicial, *supra*, proveen una definición del término <u>parte promovente</u>. La Regla 4(j) define ese término como "cualquier persona natural que <u>presente una solicitud</u> para que se investigue la conducta o capacidad de un juez o de una jueza". 4 L.P.R.A. Ap. IV-B (Énfasis suplido). Según esta definición, lo único necesario para ser considerado <u>parte promovente</u> es haber activado un proceso disciplinario contra un juez mediante una solicitud de investigación. Es importante enfatizar que en la definición de <u>parte promovente</u> que se codificó en las Reglas de Disciplina Judicial, *supra*, no se utilizó la frase "que presente una <u>queja</u>", sino meramente que "presente una <u>solicitud</u>."

Por otro lado, hace unos días tuvimos la oportunidad de definir el término <u>parte promovente</u> en el contexto del Reglamento de este Tribunal, el cual es germano a las Reglas de Disciplina Judicial, *supra*, pero que carece de una definición específica para ese término. En *In re M.M.T., M.I.T.A., L.S.T.,* 2014 T.S.P.R. 117, expusimos que el diccionario de la Real Academia Española define el verbo "promover" como "[i]niciar o impulsar una cosa o un proceso, procurando su logro." <u>Id</u>. pág. 7. De acuerdo con esta definición, resolvimos que en el contexto de los procesos disciplinarios contra abogados que se rigen por el Reglamento de este Tribunal, <u>parte promovente</u> "se refiere a aquella persona que ha impulsado la acción disciplinaria y que, a su vez, tiene conocimiento personal y legitimación activa con relación a la queja." <u>Id</u>.

Estas definiciones tienen su razón de ser. Primero, garantizan que el procedimiento disciplinario se activará por personas que tengan un interés particular y justificado en ver disciplinados ya sea a un abogado o a un miembro de la judicatura. En el caso de los jueces, y según señalamos en *In re M.M.T., M.I.T.A., L.S.T., supra,* ese interés particular incluso se convierte en una obligación ya que el Canon 7 de los Cánones de Ética Judicial establece que:

Cuando los hechos les consten personalmente, las juezas y los jueces <u>promoverán</u> y cooperarán con los procedimientos disciplinarios que procedan contra cualquier jueza, juez, abogada, abogado, funcionaria, funcionario, empleada o empleado de la Rama Judicial que actúe contrario a lo

dispuesto en los cánones, en las normas administrativas, en los reglamentos y en las leyes vigentes. Cánones de Ética Judicial, *supra*. (Énfasis suplido).

Segundo, los Reglamentos aspiran a que esa parte promovente participe activamente del proceso disciplinario ya que le cobijan una serie de derechos para alentarlo a continuar impulsando el procedimiento aun cuando en algunas etapas se proceda con el archivo de la Queja que activó. Es por ello que las Reglas de Disciplina Judicial, *supra*, le otorgan a la parte promovente el derecho a solicitar reconsideraciones de decisiones de archivar Quejas e incluso le proveen la oportunidad de, en última instancia, solicitar revisión al Pleno de este Tribunal.

A tenor con la definición del término parte promovente que proveen las Reglas de Disciplina Judicial, *supra*, y el precedente que hemos discutido, establecemos que en el ámbito del proceso disciplinario contra jueces, la parte promovente es aquella que activa e impulsa el procedimiento para que se investigue la conducta de un juez, independientemente del mecanismo que haya utilizado para ello.

Con estas definiciones presentes, pasemos a atender el reclamo presentado por el peticionario en el asunto de epígrafe.

**III**

En la controversia ante nuestra consideración, a tenor con el deber que les impone el Canon 7 de Ética Judicial, el peticionario y dos (2) Jueces de Apelaciones nos solicitaron que se investigara la conducta del Juez Candelaria Rosa en el contexto del caso *Pueblo v. Héctor Cordero Cruz*, J SC2008G-0337. Luego de discutir el pedido con todo el Tribunal en Pleno, el entonces Juez Presidente refirió el asunto a la Directora Administrativa de los Tribunales quien, de acuerdo con las Reglas de Disciplina Judicial, *supra*, solicitó a la Oficina de Asuntos Legales de la O.A.T. que comenzara una investigación sobre los hechos.

Según discutido, y al cabo de dos (2) años y ocho (8) meses de comenzado el proceso disciplinario, la Directora Administrativa de los Tribunales notificó mediante carta al Juez Candelaria Rosa que se había determinado archivar la Queja presentada en su contra. Del expediente podemos colegir que copia de esa notificación solo se le envió al entonces Juez Presidente, ya que la Directora sostiene que él fue la parte promovente del proceso disciplinario contra el Juez Candelaria Rosa y no los Jueces de Apelaciones que nos refirieron el asunto. De hecho, los

Jueces de Apelaciones que solicitaron la investigación nunca se enteraron del resultado de esta hasta el mes pasado.

Tras analizar el expediente del asunto de referencia, es forzoso concluir que la interpretación del término parte promovente dada por la Directora Administrativa de los Tribunales en la Queja presentada contra el Juez Candelaria Rosa es errada. De una mera aplicación de la definición del término que proveen las Reglas de Disciplina Judicial, *supra*, es obvio que el peticionario y los Jueces de Apelaciones fueron las personas que solicitaron inicialmente y promovieron la investigación en cuanto a la conducta del Juez Candelaria Rosa. El que no lo hayan hecho directamente en la O.A.T. mediante una Queja formal es inmaterial para determinar si estos eran las partes promoventes del procedimiento disciplinario. Sencillamente, resulta incuestionable el hecho de que el peticionario y los Jueces de Apelaciones fueron los que activaron e impulsaron la Queja contra el Juez Candelaria Rosa. Resolver lo contrario sería estimular que los jueces presenten quejas directamente en la O.A.T. en lugar de referir el asunto a este Tribunal Supremo.

Establecido el hecho de que el peticionario era parte promovente de esa Queja, resta resolver si este tenía derecho a ser notificado de los resultados de la investigación. Como vimos, la Regla 8(c) de las de Disciplina Judicial establece que la parte promovente de un proceso disciplinario tiene derecho a que se le notifique en cuanto al archivo de una Queja. Además, la Regla 8(d) le exige a la Directora Administrativa de los Tribunales que le aperciba textualmente a la parte promovente que tiene un término de diez (10) días para ejercer su derecho a solicitar reconsideración en cuanto a la decisión de archivar.

Al determinar que el peticionario es parte promovente de la investigación llevada a cabo en cuanto a la conducta del Juez Candelaria Rosa, es forzoso concluir que este tiene derecho a que se le notifiquen, de conformidad con las Reglas de Disciplina Judicial, *supra*, los resultados de la investigación de la Queja y la decisión de archivarla. Esa notificación no se cumple con meramente "compartir" con el peticionario los documentos de la investigación. Según discutido, las Reglas de Disciplina Judicial, *supra*, exigen que se le curse una **notificación formal** al peticionario que debe apercibirle en cuanto a su derecho a solicitar reconsideración sobre la decisión de archivar la Queja.

**Una conclusión contraria a esta redundaría en promover un absoluto absurdo jurídico.** Si se acepta que el entonces Juez Presidente señor Hernández Denton era el

único que tenía derecho a ser notificado en cuanto al archivo de la Queja contra el Juez Candelaria Rosa, se convalidaría el lamentable escenario en que los jueces que activamente promovieron la investigación disciplinaria quedarían a oscuras y nunca se enterarían del resultado de la acción que ellos mismos activaron.[10] Como vimos, a no ser por la solicitud del peticionario a la Jueza Presidenta señora Fiol Matta el mes pasado, eso precisamente hubiera ocurrido en este caso. Por ello, la interpretación de la Directora Administrativa de los Tribunales convirtió en un teatro de lo absurdo el procedimiento disciplinario contra los miembros de la judicatura.

Además, nótese que la finalidad de la notificación a la parte promovente es que esta se entere formalmente que tiene derecho a solicitar una reconsideración si no está de acuerdo con los resultados. ¿Cómo podría el peticionario ejercer ese derecho si nunca se entera de los resultados de la investigación? El peticionario ha demostrado un interés particular en esta situación, que vio tronchado ante una interpretación ilógica del término parte promovente por parte de la Directora Administrativa de los Tribunales.

Por otro lado, ¿de qué le sirve al interés público y a los principios que rigen los Cánones de Ética Judicial interpretar que el Juez Presidente o Jueza Presidenta de este Tribunal es la única parte promovente de Quejas como las de autos –con derecho a ser notificado y solicitar reconsideración- cuando los que conocen la situación que generó la investigación son los jueces que originalmente la solicitan? Esto cobra más relevancia en la situación de epígrafe ya que el entonces Juez Presidente optó por guardar silencio y no notificar ni al Pleno ni a los Jueces de Apelaciones promoventes. Nos parece que con la interpretación dada por la Directora al término parte promovente no solo se afectó la transparencia de los procedimientos disciplinarios contra jueces, sino que se fomentó una imagen de que en la Rama Judicial se esconden los procedimientos disciplinarios contra jueces detrás de un pesado telón burocrático.

Por último, llamamos la atención a que aun si aceptáramos la posición de la Directora Administrativa de

---

[10] En el escolio 14 del Voto Particular Disidente de la Jueza Presidenta señora Fiol Matta, esta discrepa en cuanto a que el peticionario y los Jueces de Apelaciones hayan participado "activamente" de la Queja de epígrafe porque no fue hasta septiembre de 2014 que uno de ellos envió una misiva a la Jueza Presidenta. Cabe preguntarse cómo la Jueza Presidenta pretende que ellos promovieran el proceso disciplinario si ni siquiera se habían enterado que la Queja había sido archivada por la Directora Administrativa de los Tribunales.

los Tribunales en cuanto a que en esta situación el entonces Juez Presidente señor Hernández Denton era la única parte promovente, la notificación que esta hizo en cuanto al archivo de la Queja no cumplió con la Regla 8(d) de las de Disciplina Judicial. Como vimos, esa Regla exige que se le aperciba a la parte promovente en cuanto a su derecho a solicitar reconsideración. En los autos del asunto de epígrafe solo consta que la Directora le envió copia al entonces Juez Presidente de la carta que dirigió al Juez Candelaria Rosa en la que le anunció el archivo de la Queja presentada en su contra. En ninguna parte de esa carta se le apercibió al Juez Presidente su derecho a solicitar reconsideración si no estaba de acuerdo con el archivo de la Queja. Por ende, aún bajo la teoría de la Directora Administrativa de los Tribunales, no se cumplieron los requisitos de notificación que establece la Regla 8(d) de las de Disciplina Judicial.

Además, nótese que la interpretación de la Oficina de Administración de los Tribunales (O.A.T.) en cuanto a que el Juez Presidente es la única parte promovente genera un estado jurídico anómalo. Como se sabe, la Directora Administrativa de los Tribunales es una subalterna del Juez Presidente que actúa a nombre de ese Juez. ¿Qué lógica tiene que el Juez Presidente –como parte promovente– solicite a la Directora reconsideración del archivo de una Queja cuando, si esa funcionaria confirma el archivo, el propio Juez Presidente tendría derecho a solicitar revisión de esa decisión a él mismo o un compañero de este Tribunal? Para todos los efectos, la interpretación de la Directora convierte en final su decisión de archivar la Queja. De hecho, si el licenciado López Feliciano no hubiera comparecido ante este Tribunal hace unas semanas, precisamente eso hubiera ocurrido.

**IV**

Ya determinado que el peticionario era la parte promovente de la Queja presentada en contra del Juez Candelaria Rosa y que, por ende, tenía derecho a ser notificado formalmente de la decisión de archivarla, nos resta determinar entonces el remedio al que tiene derecho el peticionario de autos. En su comparecencia, el peticionario nos solicitó que, toda vez que nunca fue notificado en cuanto al archivo de la Queja, ordenemos la reapertura de esta. No obstante, ese proceder no es necesario ya que la notificación no fue efectiva. Consecuentemente, el procedimiento contra el Juez Candelaria Rosa no ha acabado. Es principio conocido que la notificación de cualquier proceso judicial o administrativo es parte esencial del debido proceso de ley que cobija a las partes, por lo que una notificación defectuosa ocasiona que no se activen los términos para solicitar reconsideraciones o recurrir en alzada a foros

superiores. _Véase_, por ejemplo, _IM Winner, Inc. v. Junta de Subastas del Gobierno Municipal de Guayanilla_, 151 D.P.R. 31 (2000).

Ante ese escenario, y a tenor con la Regla 8(c) y 8(d) de las de Disciplina Judicial, se le ordena a la Directora Administrativa de los Tribunales que notifique adecuada e **inmediatamente** los resultados de la Queja presentada contra el Juez Candelaria Rosa y la decisión de archivar la misma al Lcdo. Carlos J. López Feliciano y a los Jueces de Apelaciones Hon. Sixto Hernández Serrano y Hon. Olga Birriel Cardona. El haber "compartido" esos resultados con estas personas no cumplió con los procedimientos claramente definidos en las Reglas de Disciplina Judicial.

La notificación que habrá de realizar la Directora Administrativa de los Tribunales deberá cumplir con el requisito de la Regla 8(d) de las de Disciplina Judicial y apercibirle textualmente a las partes promoventes de la Queja antes descrita su derecho a, dentro de diez (10) días, solicitar reconsideración de la decisión de archivar la misma. Si ninguna de las partes promoventes ejercen su derecho a solicitar la reconsideración, el archivo de la Queja contra el Juez Candelaria Rosa será final.

Por el contrario, de acuerdo con las Regla 9 de las de Disciplina Judicial, si alguna de las partes promoventes presenta una solicitud de reconsideración, la Directora Administrativa de los Tribunales contará con diez (10) días para atenderla y notificar su determinación a las partes promoventes que la hayan solicitado y al Juez Candelaria Rosa. _Véase_, Regla 9(a) de las de Disciplina Judicial. De estar en desacuerdo con la determinación de la Directora Administrativa, las partes promoventes podrán solicitar revisión directamente a la Jueza Presidenta señora Fiol Matta dentro de los diez (10) días siguientes a la notificación de la determinación de la Directora. _Véase_, Regla 9(b) de las de Disciplina Judicial. De aun estar inconformes, las partes promoventes podrán presentar una solicitud de revisión ante este Tribunal Supremo dentro de los diez (10) días siguientes a la notificación de la determinación de la Jueza Presidenta. _Véase_, _In re Cancio González_, supra, y Regla 9(c) de las de Disciplina Judicial.

**V**

Nuestro deber ineludible de garantizar la transparencia en los procedimientos ante la O.A.T. no puede convertirse en un mero compromiso inerte. Se requieren actuaciones proactivas, diligentes y efectivas por parte de todos los componentes de la Rama Judicial para salvaguardar la confianza del Pueblo de Puerto Rico

en nuestro sistema de justicia. Interpretaciones reglamentarias ilógicas que atenten contra ese principio de transparencia o contra los propósitos que persiguen los Reglamentos y normas de la Rama Judicial lo que consiguen es alejarnos del norte que nos hemos trazado como institución.

Lamentablemente, en el asunto de epígrafe la entonces Directora Administrativa de los Tribunales optó por hacer una interpretación reglamentaria que terminó promoviendo la imagen que tanto hemos luchado por evitar. No hay que ser un erudito para concluir que algo anda muy mal en un sistema en el cual la parte que promueve un proceso disciplinario nunca se entera del resultado de la investigación iniciada al respecto. Esto es lo que ocurre cuando las Quejas contra los miembros de la judicatura se dilucidan en cuartos oscuros. Incuestionablemente, como Rama Judicial debemos aspirar a una imagen mucho más transparente que esa.

Publíquese inmediatamente.

Notifíquese inmediatamente por correo electrónico, fax o teléfono y por la vía ordinaria.

Lo acordó y ordena el Tribunal y lo certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco emitió un Voto Particular de Conformidad. El Juez Asociado señor Rivera García emitió un Voto Particular de Conformidad. La Jueza Presidenta señora Fiol Matta emitió un Voto Particular Disidente al cual se unieron la Juez Asociada señora Rodríguez Rodríguez y la Jueza Asociada Oronoz Rodríguez.

La Juez Asociada señora Rodríguez Rodríguez disintió y emitió la expresión siguiente:

"La Juez Asociada señora Rodríguez Rodríguez disiente por las razones expresadas en el *Voto particular disidente* emitido por la Jueza Presidenta señora Fiol Matta, a la cual se une. Además, considera preocupante la campaña de descrédito y deslegitimación que poco a poco ha ido hilvanando una mayoría de este Tribunal en contra de la Oficina de Administración de Tribunales y sus funcionarios. Para reformar nuestras instituciones no es necesario destruirlas".

El Juez Asociado señor Estrella Martínez no intervino.  El Juez Asociado señor Kolthoff Caraballo está inhibido.


                        Aida Ileana Oquendo Graulau
                        Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ex parte:

Comunicación del Lcdo. Carlos
J. López Feliciano

                                    MC-2014-213

Voto Particular de Conformidad emitido por la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 20 de octubre de 2014.

El padre fundador Alexander Hamilton expresó en el Federalista No. 78 que de las tres (3) ramas que componen el sistema republicano de gobierno, la Rama Judicial es la menos peligrosa. Hamilton consideraba que ello era así ya que esta Rama no tiene ni fuerza ni voluntad, sino meramente poder de juicio. En cierto sentido, este padre fundador nos aseguraba que no había nada que temerle a la Rama Judicial ya que sus pronunciamientos siempre serían públicos y el Pueblo podría juzgar sus acciones libremente. Es decir, a diferencia de las otras ramas políticas, los tribunales tendrían que explicar sus decisiones, por lo cual sería muy

difícil confeccionar un velo que cubriera las actuaciones de sus miembros.

Lo anterior se traduce a que el principio de total transparencia debe regir en todas las determinaciones de la Rama Judicial de Puerto Rico. Ello incuestionablemente incluye el ámbito administrativo, que por disposición constitucional, es compartido entre la Jueza Presidenta del Tribunal Supremo, la Oficina de Administración de los Tribunales (O.A.T.) y el Pleno de este Tribunal. De particular importancia para la integridad de esta Rama es que no existan movidas administrativas extrañas y sospechosas que laceren la confianza del Pueblo en su Rama Judicial.

La Resolución que antecede es muestra de que, como mínimo, una Mayoría de los integrantes de este Tribunal Supremo será proactiva en llevar a cabo cualquier medida para garantizar que el principio de transparencia esté presente en todos los ámbitos de la Rama Judicial. Según he expresado hace unas semanas, ante los acontecimientos de los últimos meses, nos toca a todos llevar a cabo medidas **proactivas** para garantizar la transparencia en las labores de la Rama Judicial. Por eso, estoy conforme con la Resolución que antecede en la que se corrige un desacertado, errático y altamente perjudicial proceder por parte de la Oficina de Administración de los Tribunales y su anterior Directora Administrativa.

I

La situación involucrada en el asunto de referencia es insólita y sin precedentes. Según descrito en la Resolución de epígrafe, tres (3) jueces que descargaron la obligación que les imponen los Cánones de Ética Judicial quedaron totalmente a oscuras luego de que la entonces Directora Administrativa de los Tribunales no les notificara los resultados de una investigación de una Queja que ellos activaron. La Resolución que avala hoy el Tribunal discute correctamente el derecho aplicable, pero considero que son de vital importancia dos (2) aspectos de este asunto que me mueven a expresarme por separado.

A.

Primero, las alegaciones contenidas en la Queja presentada por el Lcdo. Carlos J. López Feliciano y dos (2) actuales jueces del Tribunal de Apelaciones son en extremo preocupantes. El peticionario y los dos (2) letrados de apelaciones cumplieron con el deber que les imponen los Cánones de Ética Judicial y refirieron al entonces Juez Presidente Federico Hernández Denton una Resolución que emitió el entonces Juez Superior Carlos I. Candelaria Rosa.

Las expresiones que ese letrado recogió en un documento público son en extremo serias. El letrado expresó lo siguiente:

> Resulta alucinante como desde el edificio del Tribunal de Apelaciones, ubicado en la calle César González de San Juan los Jueces miembros del panel apelativo que cubre el distante Centro Judicial de Ponce han podido aquilatar mejor, para disculpar, el comportamiento del Licenciado Pietro, a pesar

de que la Sentencia de Desacato se certifica haber visto dicho proceder directamente y haberlo descrito como un enfrentamiento al Tribunal [...}

...

Soy del criterio de que la Sentencia del Tribunal de Apelaciones trasluce que el panel actualmente designando a Ponce, tal vez sin saberlo, **participa de una noción distorsionada de la función judicial que propone un paradigma de Juez pusilánime,** que no se ajusta a nuestro sistema de justicia pues se aleja del ideal de equilibrio reflexivo contenido en la prudencia, que es la virtud de umbral requerida a los jueces. En la Ética Nicomáquea Aristóteles ubica la justicia entre extremos del exceso y el defecto, así por ejemplo, indica que lo virtuoso entre la cobardía y la temeridad es la valentía. De igual forma, estoy convencido de que en la función judicial conviene alejarse de los extremos de la arbitrariedad y la pusilanimidad para llegar al justo medio de la prudencia.

No obstante, **la Sentencia del Tribunal de Apelaciones se decanta por dicho modelo de pusilanimidad judicial,** a lo mejor sin cobrar noticia de ello, aunque por inadvertida deja de tener tal noción judicial el mismo efecto adverso. Lleva la razón Trías al decir que "[e]l Juez podrá o no preocuparse por los problemas de la teoría del derecho, pero, quiera o no, tendrá, consciente o inconscientemente, su propia filosofía jurídica que irremediablemente intervendrá en la emisión de sus fallos." **No cabe duda de que la conformidad del Tribunal de Apelaciones con la abierta desobediencia de una orden judicial irradia la noción castrada de Juez al que aquí hace alusión.** La posibilidad de que dicho Tribunal no haya advertido su propia teoría junto a las consecuencias de la misma corrobora también a Trías en cuanto a que "[e]l Juez sonámbulo camina por terreno minado."

...

Resulta palmario que la ostensible sumisión del criterio judicial a la voluntad irrestricta de acatar o no órdenes judiciales conferida por la Sentencia del Tribunal de Apelaciones..., mina la confianza pública en el sistema de justicia, que tiene como base fundamental la independencia judicial y el consecuente poder de dirigir el curso de los trabajos de una Sala de Justicia.

> Asimismo, la privación de autoridad que la Sentencia Revocatoria perpetra a este tribunal...para, entre otras cosas, ordenar su desempeño con alguna pretensión de acatamiento, podría tener el efecto de arrojar dudas sobre la imparcialidad del Tribunal en futuros casos de éste[.] Véase, *Comparecencia Especial en Cumplimiento de Orden*, Anejo 1. (Énfasis suplido).

Sin pasar juicio en cuanto a si estas expresiones violaron los Cánones de Ética Judicial, es evidente que el peticionario y los dos (2) jueces de apelaciones que iniciaron un proceso disciplinario contra el Juez Candelaria Rosa tenían un interés entendible en ver disciplinado a ese letrado. Incluso, como se discute en la Resolución que antecede, su puesto judicial les imponía una obligación ética de presentar la referida Queja.

Ante las expresiones vertidas por el Juez Candelaria Rosa, me deja atónita el hecho de que el peticionario se enterara de la decisión de la entonces Directora Administrativa de los Tribunales de archivar la referida Queja a través de los medios de comunicación. No hay malabar explicativo que sea suficiente para justificar ese proceder. Si el principio de transparencia significa algo, es que los que comienzan procesos disciplinarios contra miembros de la judicatura no pueden quedar encerrados en cuartos oscuros y, por consiguiente, ajenos a lo que los funcionarios de la O.A.T realicen. Espero que una situación de esta naturaleza no se repita y aconsejo a toda aquella persona que haya sido víctima de este proceder administrativo por parte de la O.A.T. a que active los

mecanismos que entienda necesarios para hacer valer los derechos que le cobijan como parte promovente de procesos disciplinarios contra jueces.

B.

Segundo, me parece bochornoso el efecto que tuvo en el ordenamiento constitucional la interpretación reglamentaria de la entonces Directora Administrativa de los Tribunales. Nótese que la Queja contra el Juez Candelaria Rosa se archivó en el mes de noviembre de 2013. Varios meses más tarde ese letrado fue ascendido al Tribunal de Apelaciones y luego confirmado por el Senado de Puerto Rico. **Es decir, el Juez Candelaria Rosa es hoy compañero de estrado de dos (2) jueces que promovieron una Queja en su contra.** Hasta hace unas semanas, estos jueces ni siquiera se habían enterado del archivo de la Queja que iniciaron.

Debido a que la Directora Administrativa de los Tribunales no notificó el archivo de la Queja a las partes promoventes, el proceso constitucional de nominación y confirmación de jueces se vio afectado ya que presumiblemente las ramas políticas del Gobierno no estaban al tanto de la situación disciplinaria a la que estuvo expuesto el Juez Candelaria Rosa. Como mínimo, sabemos que el peticionario no se había enterado del archivo de la Queja al momento en que el Juez Candelaria Rosa fue nominado al Tribunal de Apelaciones. Con su nefasto proceder, la entonces Directora Administrativa de los Tribunales afectó las funciones de tanto el Gobernador de

Puerto Rico como de los miembros del Senado de Puerto Rico al descargar sus funciones constitucionales de nominación y confirmación de jueces en Puerto Rico. Por ello, resultaba imperativo que este Tribunal interviniera para corregir el lamentable proceder de la O.A.T.

## II

Por todas estas razones estoy conforme con la Resolución que antecede. Ante este proceder, era imperativo que este Tribunal se expresara y dejara claro que la O.A.T. no puede llevar a cabo interpretaciones reglamentarias que laceren el principio de transparencia y menoscaben la confianza del Pueblo en la Rama Judicial.

Si en realidad esta Rama es la menos peligrosa de las tres, como mínimo debemos garantizar que los procedimientos disciplinarios contra jueces no se diluciden en cuartos oscuros. Querer desviar la atención mediante argumentos burocráticos o con alegaciones de que se tratan de lacerar los poderes de la Jueza Presidenta, es una negación del rol que debemos ejercer como el Tribunal de última jerarquía en Puerto Rico. Por mi parte, y ante el llamado del Pueblo, continuaré promoviendo que se forjen nuevos caminos en la Rama Judicial y no meramente que atendamos las situaciones de los últimos meses con una mentalidad de "más de lo mismo". Nuestra Rama, y nuestro Pueblo, merecen mucho más.

Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ex parte:

Comunicación del
Lcdo. Carlos J. López
Feliciano

MC-2014-0213

Voto Particular de Conformidad emitido por el Juez Asociado señor RIVERA GARCÍA

En San Juan, Puerto Rico, a 20 de octubre de 2014.

Es mi firme convicción, que este Tribunal tiene la imperiosa responsabilidad de resguardar y fortalecer la trasparencia en los procesos disciplinarios en pos de la sana administración de la justicia. Mediante la Resolución que hoy emite este Tribunal, volvemos a dar vida a esa transparencia protegiéndola de nieblas completamente innecesarias. Esta es una característica que ineludiblemente debe permear en todos los procesos disciplinarios que se ventilan en nuestro sistema judicial, independientemente de cómo y contra quién se haya iniciado dicho procedimiento. Meras interpretaciones lingüísticas

desacertadas no pueden operar como un obstáculo que mine la consecución de ese diáfano objetivo.

No es necesario recapitular los hechos que dieron origen a esta controversia ya que están correctamente reseñados en la Opinión *Per Curiam* que precede, por lo que nos remitimos a los mismos. Sin embargo, entiendo pertinente hacer un hincapié especial en lo que respecta al Canon 7 de los Cánones de Ética Judicial[11]. El deber que este precepto le impone a todos los jueces y juezas necesariamente redunda en lo que hoy estamos resolviendo, esto es, que el juez o jueza que promueve un asunto disciplinario contra otro juez debe considerarse como parte promovente de dicho procedimiento. Por ello, es insoslayable que se le notifique sobre los incidentes procesales acaecidos durante todo el trámite de la queja presentada.

I

Sabemos que los Cánones de Ética Judicial son normas mínimas de conducta que rigen a los miembros de la judicatura con el propósito de que  su comportamiento "sea ejemplar y fomente el respeto y la confianza del pueblo en el Sistema Judicial". In re Claverol Siaca, 175 DPR 177, 188 (2009). Véase también, In re Grau Acosta, 172 DPR 159 (2007). Hemos descrito que la exigibilidad de estas normas es autoimpuesta, ya que "su aceptación como marco normativo

---

[11] In re: Aprobación Cánones de Ética Judicial, 164 DPR 403, 417 (2005).

es consustancial a la aceptación del cargo". <u>In re Ramos Mercado</u>, 170 DPR 363, 392 (2007). En otras palabras, son **imperativas** para todos los que vestimos una toga y tenemos la sensitiva responsabilidad de honrarla para hacer valer la justicia.

En nuestro poder inherente de reglamentar la judicatura, hemos incluido como parte de esta normativa que los jueces y las juezas promuevan procesos disciplinarios contra otros compañeros jueces, abogados o funcionarios de la rama judicial que actúen de manera antiética o contraria a la ley. Esto no es un asunto nuevo. Ya desde los Cánones de Ética Judicial de 1977 se había establecido en el Canon IV lo siguiente:

> Los Jueces y las Juezas deben mantener las mejores relaciones y cooperar entre sí para lograr la más eficiente administración de la justicia. Su conducta debe enmarcarse en el respeto mutuo, la cordialidad y la colaboración profesional, sin que importen las diferencias en sus posiciones relativas dentro del sistema judicial. Se cuidarán de hacer críticas infundadas o innecesarias que tiendan a menospreciar el prestigio de sus compañeros Jueces o compañeras Juezas. Velarán por que la conducta de éstos y éstas se ajuste a estos cánones tanto en su proceder personal como en el desempeño de las funciones judiciales. **El Juez o la Jueza debe promover los procedimientos disciplinarios que procedan contra cualquier Juez o Jueza, abogado o abogada que actúe impropia o deshonrosamente, cuando así le conste personalmente.** (Énfasis nuestro)

Nótese que el lenguaje contenido desde aquel entonces le imponía a los jueces y a las juezas la obligación de promover estas acciones. Años después, este Tribunal adoptó

los Cánones de Ética Judicial de 2005.[12] Al hacerlo, acogió nuevas normas que precisarían aún más los parámetros de la conducta ética.[13] Es importante puntualizar que en la citada Resolución reiteramos como ejemplo de estos parámetros el deber de los jueces y las juezas de promover este tipo de procedimientos disciplinarios.[14] En otras palabras, aunque ello estaba contenido en los anteriores Cánones de 1977, al adoptar los nuevos Cánones de 2005 impregnamos ese deber con mayor fuerza y energía. Por ello, se incorporó la última oración del anterior Canon IV en un precepto que atendería exclusivamente esa materia. De esta forma,  el actual Canon 7 de Ética Judicial dispone en parte:

> Cuando los hechos les consten personalmente, las juezas y los jueces **promoverán** y **cooperarán** con los procedimientos disciplinarios que procedan contra cualquier jueza, juez, abogada, abogado, funcionaria, funcionario, empleada o empleado de la Rama Judicial que actúe contrario a lo dispuesto en los cánones, en las normas administrativas, reglamentos y leyes vigentes.[15]

---

[12] In re: Aprobación de Cánones de Ética Judicial de 2005, supra.

[13] Íd., pág. 405.

[14] Íd.

[15] Íd., pág. 417. El contenido de ese Canon 7 correspondió a las normas del Canon 3D(1) y (2) del Código Modelo de Conducta Judicial promulgado por la American Bar Association, que disponía como sigue:

D. Disciplinary Responsibilities.

(1) A judge who receives information indicating a substantial likelihood that another judge has committed a violation of this Code should take appropriate action. A judge having knowledge that another judge has committed a violation of this Code that raises a substantial question as to the other judge's fitness for office shall inform the appropriate authority.

(2) A judge who receives information indicating a substantial likelihood that a lawyer has committed a violation of the Rules of Professional Conduct should take appropriate action. A judge having knowledge that a lawyer has committed a violation of the Rules of Professional Conduct that raises a

Es de notar que el lenguaje del anterior Canon IV que establecía el deber de promover procesos contra abogados que actuaran *impropia* o *deshonrosamente*, se sustituyó para especificar que se extendía a casos en que se actuara *contrario a lo dispuesto en los cánones, en las normas administrativas, reglamentos y leyes vigentes*. De manera que, según se redactó este Canon 7, el deber que pesa sobre los hombros de los jueces y las juezas en cuanto a promover procesos disciplinarios resulta ser mucho más amplio y riguroso.

Por otro lado, los principios que recogían el anterior Canon IV de Ética Judicial de 1977 se incorporaron en el actual Canon 6 que regula lo concerniente a las relaciones y cooperación entre las juezas y los jueces. Mencionamos esto porque es pertinente prestar atención a los comentarios que merecieron los nuevos Cánones 6 y 7, <u>supra</u>. Al respecto, expresamos lo que sigue:

> El deber de mantener una actitud de cordialidad y respeto que impone el Canon 6 **no excluye la obligación** de velar por que la conducta ética de los compañeros jueces y juezas sea cónsona con estos cánones, tanto en sus actividades personales como en el desempeño de las funciones judiciales. **Por ello, este canon impone a los miembros de la judicatura la obligación de promover procedimientos disciplinarios contra juezas, jueces, abogadas y abogados** cuya conducta sea contraria y en violación de los cánones de ética judicial o profesional, cuando la conducta incurrida les conste personalmente,

---

substantial question as to the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects shall inform the appropriate authority.

En los comentarios al Código Modelo de Conducta Judicial se mencionó que la acción en respuesta al conocimiento de que un juez o abogado incurrió en conducta antiética podía incluir una acción directa, o, reportar la conducta a la autoridad o agencia competente.

**independientemente  de  que  ello  pudiera  resultarles  incómodo.** (Énfasis nuestro).[16]

Como  vemos,  se  enfatizó  la  importancia  de  promover este  tipo  de  procedimientos  disciplinarios  al  punto  de  que se  recalca  y  se  exige  el  cumplimiento  con  ese  deber independientemente  de  que  ello  resulte  incómodo.  En  In re Claverol Siaca,  supra,  pág.  191,  reafirmamos  que  este  Canon 7  "responde  a  que  los  jueces  tienen  la  obligación  no  sólo de  conformar  su  propia  conducta  a  los  más  altos  estándares éticos,  sino  de  velar  por  que  otros  jueces,  abogados  y personal  de  la  Rama  Judicial  cumplan  con  las  normas  de ética  judicial  y  profesional".  En  otras  palabras,  más  que una  facultad,  esto  una  exigencia  que  no  debe  ser  abdicada por  quienes  nos  regimos  por  estas  normas  éticas.

II

En  este  caso  el  asunto  que  se  investigó  respecto  a  la conducta  del  Juez  Superior  Carlos  I.  Candelaria  Rosa  (Juez Candelaria  Rosa)  fue  referido  a  este  Tribunal  por  parte  de un  panel  de  Jueces  del  Tribunal  de  Apelaciones.  Luego  de ello,  el  entonces  Juez  Presidente  señor  Hernández  Denton refirió  el  asunto  a  la  Oficina  de  Administración  de  los Tribunales  (OAT).  Recordemos  que  la  Regla  5(c)  de Disciplina  Judicial,  4  LPRA  Ap.  XV-B,  dispone:

> El  Juez  Presidente  o  la  Jueza  Presidenta,  un Juez  Asociado  o  una  Jueza  Asociada,  el  Director o  la  Directora,  podrán  solicitar  a  iniciativa propia  y  por  escrito,  una  investigación  sobre  la conducta  o  capacidad  de  un  juez  o  una  jueza. Dicha  solicitud  se  considerará  como  una  queja,

---

[16] Íd., pág. 417.

sin que sea necesario cumplir con los requisitos formales del inciso (b) de esta regla.

Ahora bien, ¿impide el lenguaje de esa regla que el panel de jueces de apelaciones que refirió el asunto que se iba a investigar sea considerado como la parte promovente de la queja de este caso? La construcción semántica de las palabras, la lógica de los procedimientos disciplinarios y los postulados del Canon 7, supra, nos llevan a contestar negativamente.

Como mencionamos recientemente en In re M.M.T., M.I.T.A., L.S.T., 2014 TSPR 117, promover implica impulsar una cosa o un proceso, procurando su logro. Por su parte, la Regla 4(j) de Disciplina Judicial, supra, define el término parte promovente como "cualquier persona natural que presente una solicitud para que se investigue la conducta de un juez o de una jueza". Evidentemente, en el contexto de la controversia que nos ocupa, quien inició e impulsó el proceso disciplinario que se llevó a cabo respecto a la conducta del Juez Candelaria Rosa lo fue el panel de jueces del Tribunal de Apelaciones. Esto, independientemente del curso que siguió ese requerimiento inicial.

En este caso, los jueces trajeron ante la atención de esta Curia la alegada conducta antiética del magistrado y asimismo este Tribunal la refirió a la OAT conforme está establecido en las Reglas de Disciplina Judicial, supra. Independientemente de que finalmente quien sometió el asunto a investigación fue el otrora Juez Presidente señor

Hernández Denton, **ello no implica que quienes promovieron ese asunto fueron los distinguidos jueces del panel Tribunal de Apelaciones.**

Por otra parte, nótese además que el Canon 7, supra, le exige a los jueces promover y cooperar en asuntos disciplinarios contra otros jueces, cuando les conste personalmente que se hayan cometido actos antiéticos o ilegales. El Diccionario de la Real Academia Española define "cooperar" como "obrar juntamente con otro u otros para un mismo fin".[17] Difícilmente podrá un juez o una jueza cumplir con este deber si luego de que refiere el asunto no se le informa el curso que siguió el proceso disciplinario. ¿Qué sentido tiene que se le exija a los jueces con conocimiento personal de actos antiéticos que cooperen en el esfuerzo erradicar conductas que laceren la integridad del sistema de justicia si luego se les excluye de las instancias del procedimiento disciplinario? ¿Cómo habrá de hacerlo? ¿Cómo podrá refutar una determinación que a su entender sea contraria a lo que vio o escuchó? ¿Cómo podrá realizarse una investigación completa?

Al reflexionar sobre estas interrogantes, sin lugar a dudas, debemos concluir que todo juez o jueza que conforme a los postulados del Canon 7, supra, solicite que se investigue cierta conducta de otro magistrado debe considerarse parte promovente del proceso disciplinario que posteriormente se ventile contra este último. Al ser así,

---

[17] Disponible en: http://lema.rae.es/drae/?val=cooperar. (última visita: 15 de octubre de 2014.)

es acreedora de todos los derechos que las Reglas de Disciplina Judicial, _supra_, consignan respecto a la parte promovente, como por ejemplo, ser notificado de todos los trámites procesales y poder solicitar que se revise la decisión de archivar una queja. Lo contrario atentaría vehementemente contra la esencia misma de los procesos disciplinarios y de los propios Cánones de Ética Judicial. Esto, en cuanto dichos cánones exigen a los jueces promover y cooperar en procedimientos disciplinarios cuando tienen conocimiento personal de hechos que ameriten investigar a un compañero o una compañera juez.

Por las razones que anteceden estoy conforme con la determinación a la que hoy arriba nuestro Tribunal.


Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ex Parte:
Comunicación del Lcdo. Carlos J.      MC-2014-213
López Feliciano

Voto Particular Disidente emitido por la Jueza Presidenta SEÑORA FIOL MATTA al cual se unen la Juez Asociada SEÑORA RODRÍGUEZ RODRÍGUEZ y la Jueza Asociada ORONOZ RODRÍGUEZ

En San Juan, Puerto Rico, a 20 de octubre de 2014.

La decisión sobre la cual debemos expresarnos hoy responde a una interpretación del poder de reglamentación que la Constitución de Puerto Rico ha delegado a este Tribunal que no puedo avalar. Al amparo de un procedimiento inexistente, la mayoría de este Tribunal elabora una definición redundante e innecesaria de lo que significa ser parte promovente en un proceso disciplinario contra un miembro de la judicatura.[18] Dicha definición no sólo

---

[18] Recientemente este Tribunal definió el concepto "parte promovente" en el contexto de un procedimiento disciplinario contra profesionales del derecho. Aunque hice constar mi inconformidad con que se emitiera una opinión en lugar de una resolución, que era lo que correspondía porque los procedimientos se encontraban en la etapa inicial de queja, estuve conforme con definir el concepto porque el Reglamento de este Tribunal carecía de la definición. Sin embargo, en este caso, que trata de un procedimiento en contra de un juez y que se rige por las Reglas de Disciplina Judicial, eso es innecesario pues, como veremos, el concepto ya está definido.

ya existe en nuestras Reglas de Disciplina Judicial,[19] sino que no contribuye en nada a resolver la controversia que el propio Tribunal ha creado para justificar su actuación. Sin embargo, lo más preocupante de este proceso tan atropellado es que se ha reabierto un proceso disciplinario contra un miembro de la judicatura, que ya concluyó y se condujo de acuerdo a las normas del Reglamento y del debido proceso de ley.

## I.

La resolución mayoritaria asevera que su decisión es un ejercicio del poder de reglamentación de este Tribunal. Por eso, como cuestión de umbral, nos preguntamos ¿qué reglamento o enmienda estamos adoptando hoy? ¿Por qué, si se está reglamentando o enmendando un reglamento existente, ordenamos mostrar causa como si se tratara de un caso y controversia adjudicable? ¿Por qué, si estamos ejerciendo legítimamente nuestro poder de reglamentación, concedemos un remedio a una supuesta parte agraviada?[20]

Los hechos que dan lugar a la Resolución están claramente expuestos en la decisión mayoritaria. Por eso, pasamos directamente a evaluar las normas aplicables.

---

[19] 4 L.P.R.A. Ap. XV-B.

[20] En mi voto particular disidente en *In re Aprobación de las Reglas para los Procedimientos de Investigaciones Especiales Independientes de la Rama Judicial, Designación de Miembros de la Comisión Especial Independiente y Adopción de Medidas Relacionadas*, 184 D.P.R. 575, 644 (2012), advertí sobre el peligroso proceder de este Tribunal al hacer un uso impropio del poder de reglamentación. Haciendo referencia al caso *Negrón Soto v. Gobernador*, 110 D.P.R. 664 (1981), expresé: "En primer lugar [en aquél caso], separamos con meridiana claridad la función administrativa del quehacer adjudicativo judicial, distinción que la mayoría no reconoce en esta ocasión, pues simultáneamente adopta un reglamento administrativo y adjudica una controversia que aún no se le ha presentado al amparo de las reglas recién adoptadas".

II.

La presente controversia se enmarca en la interpretación de las Reglas de Disciplina Judicial, *supra*, aprobadas por este Tribunal para atender las quejas contra los jueces municipales, jueces superiores y jueces apelativos del País.[21] Los hechos que discute la Resolución corresponden a un caso resuelto en febrero de 2011, bajo las Reglas de Disciplina Judicial de 2005. Nuestro análisis, y el del Tribunal, deben, por tanto, basarse en estas reglas.

El alcance de las Reglas de Disciplina Judicial de 2005 está delimitado en la Regla 3. Acorde a ésta, las Reglas de Disciplina Judicial aplicarán cuando un juez o jueza del Tribunal de Primera Instancia o del Tribunal de Apelaciones sea señalado o señalada por violar la Ley, los Cánones de Ética Judicial, el Código de Ética Profesional o las órdenes y normas administrativas aplicables. También aplicarán ante señalamientos de negligencia crasa, inhabilidad o incompetencia profesional manifiesta en los deberes judiciales, o cuando el juez o jueza padezca una condición física o mental que no le permita ejercer sus

---

[21] Recientemente enmendamos estas reglas mediante Resolución para a fomentar mayor transparencia en los procedimientos disciplinarios y asegurar que el reglamento "sirva como mecanismo profiláctico de cualquier conducta antiética que pueda socavar la integridad del sistema judicial, **sin menoscabar el derecho al debido proceso de ley de los jueces y juezas"**. Al adoptar estas enmiendas, expresamos que la conducta contraria a la ley y al ordenamiento ético no tendría cabida entre los funcionarios de la Rama Judicial. Enmiendas a las Reglas de Disciplina Judicial, Resolución de 8 de septiembre de 2014, 2014 TSPR 105. (Énfasis suplido).

funciones.[22]

Por otro lado, la Regla 4 de Disciplina Judicial define los términos utilizados en este reglamento. El inciso (j) define el término aquí en controversia:

> (j) *Parte promovente-* Cualquier persona natural que presente una solicitud para que se investigue la conducta o capacidad de un juez o de una jueza. [23]

Mientras, la Regla 5 de las de Disciplina Judicial, central a la controversia que da base a la resolución mayoritaria, adopta dos mecanismos para iniciar correctamente un proceso disciplinario en contra de un juez o jueza. Por la pertinencia de esta regla al asunto ante nuestra consideración la citaremos tal y como fue aprobada en las Reglas de Disciplina Judicial de 2005:

> (a) Cualquier persona interesada en que se investigue la conducta de un juez o de una jueza **podrá presentar una queja personalmente o por correo ante la Oficina de Asuntos Legales.**
> (b) La queja cumplirá con los siguientes requisitos:
>    (1) Se formulará por escrito.
>    (2) Se formulará bajo juramento.
>    (3) Indicará el nombre completo, dirección postal y número de teléfono de la persona promovente.
>    (4) Identificará a la jueza o al juez promovido por su nombre y el tribunal en el que se alega que ocurrieron los hechos, y de desconocer éstos, brindará suficientes datos que permitan su identificación.
>    (5) Expondrá brevemente los hechos que motivan la queja e indicará la fecha y lugar donde éstos ocurrieron.

---

[22] 4 L.P.R.A. Ap. XV-B, R. 3.
[23] 4 L.P.R.A. Ap. XV-B, R. 4(j). Cabe destacar que esta definición, que ya existía en el 2005, no cambió con las enmiendas introducidas recientemente.

(6) Incluirá, además, cualquier otra información e identificará testigos y documentos que sustenten la queja.

(c) **El Juez Presidente o la Jueza Presidenta, un Juez Asociado o una Jueza Asociada, el Director o la Directora, podrá solicitar a iniciativa propia y por escrito,** una investigación sobre la conducta o capacidad de un juez o una jueza. Dicha solicitud se considerará como una queja, sin que sea necesario cumplir con los requisitos formales del inciso (b) de esta regla.[24]

Se trata, como vemos, de una regla cuidadosamente detallada en la que ni siquiera se menciona la posibilidad de que una queja pueda considerarse correctamente iniciada al recibirse un referido o carta por el Juez Presidente o Jueza Presidenta o alguno de los Jueces Asociados y Juezas Asociadas. De hecho, si se recibe dicha comunicación, la Regla 5(c), *supra*, deja a la discreción del Juez Presidente o Jueza Presidenta, o de los Jueces y Juezas Asociados que la reciban, la decisión de solicitar el inicio de una investigación. Por lo tanto, si se recibe un referido de esa naturaleza y el Juez o Jueza de este Tribunal que lo recibe decide no referir el asunto o solicitar el inicio de una investigación, el proceso de queja no comienza y no existe obligación alguna de notificar o justificar dicha decisión a nadie.

---

[24] 4 L.P.R.A. Ap. XV-B, R. 5. (Énfasis añadido). Las enmiendas del 2014 añaden a la Regla 5 una oración al final del inciso (a) para establecer que también se podrán presentar querellas en el lugar dispuesto para ello en cada región judicial; y añade la expresión "deberá contener" en la primera oración del inciso (b) y una oración al final del mismo inciso que establece que el incumplimiento con alguno de los requisitos dispuestos no acarreará necesariamente el archivo de la queja.

III.

La decisión mayoritaria intenta enmarcar la presente controversia exclusivamente en torno a la definición del término "parte promovente" utilizado en el proceso disciplinario. Claramente, esa no es la verdadera controversia pues, como vimos, esa definición está expresamente contenida en la Regla 4(j) de las de Disciplina Judicial, *supra*. Sin embargo, la mayoría concluye que:

> De una mera aplicación de la definición del término que proveen la [sic] Reglas de Disciplina Judicial, supra, es obvio que el peticionario y los Jueces de Apelaciones fueron las personas que solicitaron inicialmente y promovieron la investigación en cuanto a la conducta del Juez [C]andelaria Rosa. El que no lo hayan hecho directamente en la O.A.T. mediante una Queja formal es inmaterial para determinar si estos eran las partes promoventes del procedimiento disciplinario.[25]

Nada más lejos de la verdad. Como ya vimos, incluso bajo las nuevas reglas enmendadas, el mecanismo que se elija para iniciar el proceso disciplinario contra un Juez o una Jueza es determinante para conocer el procedimiento que seguirá la queja y los derechos de las partes que intervendrán en la misma. Sólo hay dos mecanismos para iniciar el proceso: 1) que el quejoso acuda a la Oficina de Asuntos Legales de la Oficina de Administración de los

---

[25] Opinión mayoritaria, pág. 15 – 16.

Tribunales (OAT) y presente una queja formal,[26] y, 2) que el Juez Presidente o Jueza Presidenta, cualquier Juez Asociado o Jueza Asociada o el Director o Directora de la OAT, **a iniciativa propia**, solicite el inicio de una investigación.[27] Eso era así cuando comenzó el proceso que la mayoría quiere reabrir y la regla que lo establece no fue enmendada posteriormente.

No hay controversia sobre cómo se inició el procedimiento que hoy está ante nuestra consideración. El 2 de febrero de 2011, el Lcdo. Carlos J. López Feliciano, entonces Juez del Tribunal de Apelaciones y los Jueces de Apelaciones, Hon. Juez Sixto Hernández Serrano y Hon. Olga Birriel Cardona, refirieron a la consideración del entonces Juez Presidente Federico Hernández Denton una Resolución en la que se hacían señalamientos éticos en contra del Juez Superior Carlos I. Candelaria Rosa. Distinto a lo que dice la Opinión mayoritaria, el referido se hizo al Juez Presidente y no al Pleno del Tribunal Supremo. No obstante, el Juez Presidente decidió llevar la situación a la consideración del Pleno, sin estar obligado a ello por ninguna regla o norma. La pregunta que debemos hacernos es, en cuál de los dos procedimientos de la Regla 5 de Disciplina Judicial, *supra*, se puede ubicar la acción que los Jueces de Apelaciones López Feliciano, Hernández Serrano y Birriel Cardona decidieron tomar.

---

[26] 4 L.P.R.A. Ap. XV-B, R. 5(b). Bajo las nuevas enmiendas, también se podrá presentar la queja en los lugares dispuestos en cada Región Judicial.

[27] 4 L.P.R.A. Ap. XV-B, R. 5(c).

Claramente estamos ante la situación descrita en el inciso (c) de la Regla 5. Así, el Juez Presidente tenía sometida a su entera discreción la posibilidad de solicitar el inicio de una investigación o simplemente descartar dicha alternativa, sin tener que dar ninguna explicación o notificar a nadie. Incluso, cualquiera de los Jueces Asociados o Juezas Asociadas a los que se les hubiese hecho el referido hubiera podido descartarlo discrecionalmente, sin mayores consecuencias. La opción escogida por los Jueces de Apelaciones que refirieron el asunto no les concedía el derecho a ser notificados del curso de acción escogido por el Juez Presidente. Tampoco había obligación de notificarles el resultado de la solicitud de investigación que éste decidió presentar a la Oficina de Administración de los Tribunales ya que ese resultado es el producto de una decisión exclusivamente discrecional. A igual conclusión tendríamos que llegar si la solicitud la hubiese hecho un Juez o Jueza de este Tribunal tras un referido similar. La mera lectura de la Regla 5(c) es suficiente para darnos cuenta de lo anterior.

Por otro lado, los Jueces del Tribunal de Apelaciones que hicieron el referido tenían a su disposición otro procedimiento que les hubiera garantizado el derecho a notificación que el licenciado López Feliciano ahora reclama. Si hubieran presentado una queja formal al amparo de la Regla 5(b), *supra*, no habría ninguna duda de que serían partes promoventes y tendrían derecho a ser

notificados, incluso de la decisión de no iniciar una investigación, si ese hubiera sido el caso.[28] Claramente, el método escogido para presentar una queja no es sólo importante, es trascendental para determinar el procedimiento que se seguirá y los derechos que cobijan a las partes. Decidir otra cosa es obviar el texto claro de nuestras Reglas de Disciplina Judicial.

La nueva definición que la mayoría de este Tribunal da al concepto "parte promovente" nos lleva a la misma conclusión. En la página 14 de la Resolución se establece que: "… la parte promovente es aquella que activa e impulsa el procedimiento para que se investigue la conducta de un juez, independientemente del mecanismo que haya utilizado para ello".[29] No se deroga ni se enmienda el procedimiento establecido en la Regla 5 (c). Por tanto, si bajo esta nueva definición de parte promovente un Juez o una Jueza, o cualquier otra persona natural le refiere por carta, resolución o llamada telefónica anónima, una queja en contra de un juez o jueza al Juez Presidente o Jueza Presidenta, a los Jueces Asociados o Juezas Asociadas o al Director o Directora de la OAT, ¿sería diferente el

---

[28] *Ver*, Regla 6 (b) y (d), 4 L.P.R.A. Ap. XV-B, R. 6 (b) y (d).

[29] Opinión mayoritaria, pág. 14. La Opinión mayoritaria también expresa que los Jueces del Tribunal de Apelaciones promovieron "activamente" la investigación. Los hechos no controvertidos establecen que éstos refirieron la Resolución a la atención del Juez Presidente el 2 de febrero de 2011. Luego de esto, no es hasta el 11 de septiembre de 2014, es decir 3 años y 7 meses después, que uno de ellos envía una misiva a la Jueza Presidenta solicitando información sobre el resultado de su referido. Durante todo este tiempo los Jueces del Tribunal de Apelaciones no mostraron ningún interés en su referido. Ciertamente, esto dista mucho de lo que sería promover activamente un proceso investigativo.

resultado? Si se determina que el referido sometido bajo la Regla 5(c) de las de Disciplina Judicial no amerita el inicio de un proceso disciplinario, ¿habría que notificar a alguien? La respuesta es que no. Iniciar una investigación disciplinaria bajo el inciso (c) de la Regla 5 deja a la discreción de los funcionarios allí mencionados el solicitar la investigación "por iniciativa propia".[30] A diferencia del procedimiento iniciado bajo el inciso (b) de la Regla 5, no hay ninguna obligación de notificar a nadie si no se solicita el inicio de una investigación porque bajo dicha regla, la parte promovente, el que inicia el proceso investigativo, es el Juez Presidente o Jueza Presidenta, los Jueces Asociados y Juezas Asociadas y/o el Director o Directora de la OAT. **Nadie más**.[31]

La anterior conclusión nos da la respuesta al por qué, en la situación ante nuestra atención, la Directora de la OAT notificó únicamente al entonces Juez Presidente Hernández Denton de su decisión de archivar la queja que éste le refirió. Una vez recibió la Resolución de los Jueces del Tribunal de Apelaciones el Juez Presidente decidió, a iniciativa propia, solicitar el inicio de una investigación disciplinaria a la Oficina de Asuntos Legales

---

[30] Evidentemente, la discreción que tienen estos funcionarios se ve limitada por las obligaciones éticas, morales y legales que les aplican y requieren que actúen ante la posible comisión de un delito y la violación de alguna norma de conducta ética, entre otros.

[31] Incluso, las propias Reglas de Disciplina Judicial instruyen al Director o Directora de la OAT a notificar al Juez Presidente o Jueza Presidenta, a exclusión de cualquier otra persona que no sea el juez o jueza querellado, del trámite seguido por una solicitud de investigación al amparo de la Regla 5(c). *Ver*, Regla 6 (f) (g) y (h), 4 L.P.R.A. Ap. XV-B, R. 6 (f) (g) y (h).

de la OAT.  El proceso claramente se inició bajo la Regla 5(c) de las de Disciplina Judicial.

Luego de la investigación,[32] la Oficina de Asuntos Legales sometió un informe a la Directora de la OAT en el cual recomendó archivar la queja.  La Directora acogió dicha recomendación y notificó su decisión a las únicas personas a las que venía obligada a hacerlo: al Juez Superior Candelaria Rosa y al Juez Presidente, como promovente de la investigación. No hay razón ni fundamento jurídico para configurar ahora una controversia inexistente en torno a la definición de parte promovente y no reconocer que el cuestionamiento del licenciado López Feliciano descansa en su inconformidad con el mecanismo que él mismo eligió para presentar su queja.

IV.

Como Jueza Presidenta defiendo el principio cardinal de transparencia en los procedimientos disciplinarios por conducta anti-ética de los miembros de la Rama Judicial. Incluso, reconozco la bondad de revisar periódicamente las disposiciones de nuestros reglamentos y le doy la bienvenida a los procesos de ponderación y discusión que esto requiere. No me opongo a que, utilizando los mecanismos adecuados, hagamos las enmiendas reglamentarias necesarias para reforzar los mecanismos con que cuenta el Tribunal para garantizar la verticalidad de los miembros de

---

[32] La Opinión mayoritaria pone énfasis en que la OAT tardó 2 años y 8 meses en concluir la investigación de la queja. Ciertamente este período de tiempo es inaceptable.

la judicatura. Lo que no es aceptable es que, con el pretexto de traer transparencia a los procedimientos, violemos principios judiciales de gran importancia para nuestro balance constitucional, entre ellos los principios de justiciabilidad. Esta decisión crea un precedente peligroso. Con la excusa de ejercer nuestro poder de reglamentación, hemos iniciado motu proprio un procedimiento cuasi adversativo, expidiendo una orden para mostrar causa sin partes ni controversia. En efecto, autoriza al Pleno de este Tribunal a intervenir, por iniciativa propia, en un proceso disciplinario administrativo aunque éste haya concluido luego de los trámites reglamentarios correspondientes.[33]

El profesor Carlos E. Ramos González ha expresado sobre el poder de reglamentación de este Tribunal que: "[e]l poder de auto-reglamentación solo será legítimo y eficiente si el Tribunal actúa con **prudencia, transparencia, inteligencia** y actuando en **consenso**".[34] Y no es para menos, pues las decisiones que tome este Tribunal Supremo en torno a las reglas que regirán el proceso disciplinario e investigativo contra los miembros del Tribunal General de Justicia deben ser tomadas con el mayor de los cuidados y con plena conciencia de que nos jugamos

---

[33] Las Reglas de Disciplina Judicial, *supra*, establecen el trámite para que un caso y controversia llegue legítimamente ante nuestra consideración. *Ver*, Regla 9 de las de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B, R. 9.

[34] Carlos E. Ramos González, *La Crisis Constitucional y el Ejercicio del Poder de Reglamentación por el Tribunal Supremo de Puerto Rico*, 46 Rev. Jur. U. Inter. P.R. 249 (2012). (Énfasis original).

nuestra legitimad como últimos intérpretes del derecho puertorriqueño.


Liana Fiol Matta
Jueza Presidenta